IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUBA YESIPOVICH,

    Plaintiff,

  v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

No. C 15-00112 WHA

**ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, plaintiff appeals the denial of disability benefits. For the reasons stated herein, plaintiff's motion for summary judgment is **GRANTED IN PART**. Defendant's cross-motion for summary judgment is **DENIED**. This appeal is hereby **REMANDED** to the administrative law judge.

## STATEMENT

**1. PROCEDURAL HISTORY.**

In November 2011, plaintiff Luba Yesipovich applied for disability benefits, alleging that she was unable to work since April 2010, due to chronic fatigue syndrome, depression, posttraumatic stress disorder, neck pain, and other body pain (AR 125, 151). The agency denied her application both initially and on reconsideration so she requested a hearing. At the March 2013 hearing, the administrative law judge ("ALJ") heard from plaintiff, her counsel, a

vocational expert (Lorian Hyatt), and a non-examining medical expert (Minh Vu). Both experts appeared telephonically (AR 38–88). The ALJ rendered a thirteen-page decision, finding that plaintiff was not disabled (AR 13–25). The Appeals Council denied her request for review so the ALJ's decision became final. Plaintiff, via new counsel, commenced this action, seeking judicial review pursuant to Section 405(g) of Title 42 of the United States Code. Now pending are the parties' cross-motions for summary judgment.

## 2. ADMINISTRATIVE RECORD.

The administrative record contains voluminous medical records, including records from Dr. Godfrey Dyne (treating physician), Dr. Asya Kupisk (treating psychiatrist), Dr. Janette Hope (treating environmental-medicine specialist), Dr. Deborah DiGiaro (examining psychologist), and Dr. Christopher Mow (examining orthopedic surgeon), among others. Plaintiff also submitted letters from Lilya Brovkina (a friend) and Terry Bott (her landlord). The agency submitted records from their consulting physicians and psychologists.

## 3. ADMINISTRATIVE HEARING.

Only plaintiff, Dr. Minh Vu (a non-examining, impartial medical expert paid by the Social Security Administration), and Ms. Lorian Hyatt (an impartial vocational expert called by the administrative law judge) provided live testimony at the hearing, summarized as follows:

*Plaintiff*: In the past fifteen years, plaintiff has been assaulted three times, has been in two car accidents, and has resided in a mold-infested house. Even though she was a self-employed massage therapist and offered Russian-to-English translations to her friends a "few times a year," her massage license has expired and she has not worked since approximately 2011 (AR 53, 54, 60, 61). She rents a room in a garage in Sunnyvale and goes to the grocery store "maybe once a week." Most days, she stays "isolated" at home.

When asked why she believes she has been unable to work, she responded that she has "overwhelming, debilitating fatigue" and "chronic fatigue syndrome" due to her mold exposure. She testified about her depression, lack of energy, frozen shoulder, muscle pain and multi-joint pain, stiffness in her body, and memory problems (AR 64–73).

2

*Medical Expert*: Although Dr. Vu noted plaintiff's complaints of cervical spondylosis, right-shoulder pain, chronic fatigue, and chronic cough, Dr. Vu disagreed with plaintiff's doctors regarding the functional limitations resulting from plaintiff's alleged impairments. He found that her walking capacity could not be as limited as claimed because there was no evidence of muscle atrophy, and said that since plaintiff's MRI results were "normal," she could not have a frozen shoulder (AR 45, 47, 50, 52). Dr. Vu recommended limiting plaintiff to "light exertion," avoiding concentrated exposure to pulmonary irritants, and instructing her to never climb ladders, ropes, or scaffolds.

*Vocational Expert*: Ms. Hyatt testified that a person of plaintiff's age, education, and work experience, limited to "light exertion" without climbing ladders, ropes, and scaffolds, and without concentrated exposure to pulmonary irritants, could work as an assembler, officer helper, or hand packer. If that person was limited to reaching no more than occasionally, she could work as a counter clerk or surveillance system monitor (AR 76–80). If that person was absent three times a month, could not interact with co-workers or the public twenty-percent of the time, needed additional instructions twenty-percent of the time, *or* needed to take five-minute breaks every thirty minutes, "[t]hat person would not be employable" (AR 81–83).

**ANALYSIS**

**1. LEGAL STANDARDS.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla but not necessarily a preponderance." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. Cal. 2008) (internal citations and quotation marks omitted). The Court must review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Andrews*, 53 F.3d 1039. Review is limited only to the reasons provided by the ALJ in the disability determination. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

A claimant has the burden of proving disability. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. The ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, (iv) whether the claimant is capable of performing his or her previous job, and (v) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (internal citation omitted).

### 2. ALJ'S ANALYSIS.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 2010. At step two, the ALJ found that plaintiff had the following severe impairments: cervical spondylosis, right-shoulder pain, chronic fatigue syndrome, and chronic cough. Plaintiff's depression and anxiety, however, were "non-severe" (AR 15, 16). At step three, the ALJ found that none of plaintiff's impairments (alone or in combination) met the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that plaintiff had "no past relevant work" because it could not be determined whether her self-employment activities (*i.e.*, as a massage therapist and translator) constituted "substantial gainful activity." At step five, the ALJ determined that plaintiff was able to engage in gainful work that existed in substantial numbers in the national economy. In pertinent part, the ALJ found that plaintiff had the residual functional capacity to perform "light work," except for her inability to balance, stoop, kneel, crouch, crawl, or climb ramps or stairs frequently. Furthermore, plaintiff could never climb ladders, ropes, or scaffolds and could not have concentrated exposure to pulmonary irritants (AR 18). Nevertheless, given plaintiff's age, education, work experience, and residual functional capacity, she could be an assembler, officer helper, or hand packer. If her residual functional capacity was further limited to "occasional

1    reaching, handling, or fingering," she could be a counter clerk or surveillance system monitor.

2    Based on the aforementioned analysis, the ALJ concluded that plaintiff was not disabled

3    (AR 23–25).

### 3. TREATING AND EXAMINING PHYSICIANS.

The ALJ failed to provide specific and legitimate reasons (supported by substantial evidence) for rejecting the opinions of plaintiff's treating and examining physicians.

Our court of appeals distinguishes among: (1) treating physicians, those who treat the plaintiff; (2) examining physicians, those who examine but do not treat the plaintiff; and (3) non-examining physicians, those who neither examine nor treat the plaintiff. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). While the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. *Garrison*, 759 F.3d at 1012. When a treating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons supported by "substantial evidence" in the record. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Where a treating or examining physician's opinion is contradicted by another physician's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830–31. An ALJ errs when "he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13.

Here, the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of treating physician Dr. Dyne, treating physician Dr. Hope, treating physician Dr. Kupisk, examining physician Dr. Mow, and examining psychologist Dr. DiGiaro. All of these physicians had direct contact with plaintiff and found that plaintiff was "disabled."

- Dr. Dyne, a medical doctor, treated plaintiff in 2011. He diagnosed plaintiff with chronic fatigue syndrome, depression, and posttraumatic stress disorder. He noted that plaintiff was unable to work and needed psychiatric care (AR 314–17).

5

- Dr. Kupisk, a psychiatrist, treated plaintiff in 2011 and 2012. She diagnosed plaintiff with posttraumatic stress disorder and depressive disorder. Dr. Kupisk noted that plaintiff's "disable condition is permanent" and prescribed medications (AR 335–38, 446–47).

- Dr. Hope, an environmental-medicine specialist, treated plaintiff in 2012. She diagnosed plaintiff with severe chronic fatigue syndrome, multi-system exposure-related illness, depression, and posttraumatic stress disorder. She noted that plaintiff was "completely disabled and unable to work" (AR 371–81).

- Dr. Mow, an orthopaedic surgeon, examined plaintiff in 2012. He opined that plaintiff had a frozen shoulder and adhesive capsulitis. He noted that plaintiff was disabled from her previous occupations (AR 424).

- Dr. DiGiaro, a psychologist, examined plaintiff in 2012. She diagnosed plaintiff with severe major depression, chronic posttraumatic stress disorder, and chronic fatigue syndrome. She noted that plaintiff had a severe impairment in her ability to deal with stressors in the workplace, a mild impairment in her ability to perform detailed or complex tasks, and a moderate impairment in her abilities to interact with co-workers and the public or to maintain regular attendance in the workplace (AR 339–46).

These doctors' diagnoses of plaintiff's underlying impairments were uncontradicted, with the exception of Dr. Mow's frozen shoulder diagnosis, which Dr. Vu contradicted at the hearing. Plaintiff's treating and examining physicians' opinions on her disability and functional limitations *were* contradicted, by the opinions of Dr. Vu and the Social Security Administration's other non-examining, consulting physicians, who reviewed the medical evidence and found that plaintiff had only non-severe limitations and mild restrictions (AR 47, 51, 52, 407–11). Without specifically naming Drs. Dyne, Kupisk, and Hope, the ALJ assigned "little weight" to the opinions of plaintiff's treating physicians because (1) the physicians "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant;" (2) there were "very few office visits;" and (3) the physicians' opinions were "brief, conclusory, and inadequately supported by clinical findings." The ALJ also discounted the opinion of Dr. DiGiaro because it was inconsistent with her objective findings and was based on a one-time examination (AR 16, 17, 22, 23). None of these reasons amount to specific and legitimate reasons supported by substantial evidence.

6

*First*, that one or more physicians relied on plaintiff's complaints of her own symptoms was not reason enough to disregard professional medical diagnoses and opinions. In *Reddick*, our court of appeals concluded that the ALJ's rejection of two opinions (one treating, one consulting) on the "premise that they were based on the subjective complaints of the claimant" was "ill-suited" for the case because in a chronic fatigue syndrome diagnosis, the symptom of persistent fatigue is necessarily self-reported. *Reddick v. Chater*, 157 F.3d 715, 725–26 (9th Cir. 1998). Here too, our plaintiff was plagued with chronic fatigue syndrome — an impairment the ALJ herself found was "severe." The Commissioner argues that *Reddick* did not announce a blanket rule, and that Social Security Ruling 99-2p, issued to assist in evaluating chronic fatigue syndrome claims, sets out an analytical framework that looks at objective criteria (Opp. 14). These arguments are unavailing because *Reddick* stands for the proposition that subjective complaints may be necessary to a chronic fatigue syndrome diagnosis, a position supported by SSR 99-2p, which outlines the importance of self-reported symptoms for a chronic fatigue syndrome diagnosis. It was an error to disregard the professional medical opinions of plaintiff's treating physicians merely because they relied on plaintiff's subjective complaints of her symptoms.

*Second*, although the frequency of a patient's visits with a physician may be considered, it is not reason enough to give greater weight to the opinion of a doctor who has neither treated nor examined that patient. *See* 20 C.F.R. 404.1527(c). In *Lester*, the ALJ erred by discounting the opinion of a one-time examining physician, because although the length or frequency of a treating relationship is a factor when weighing the opinion of a treating versus examining doctor, it is "not a reason to give preference to the opinion of a doctor who has never examined the claimant." 81 F.3d at 832. Here, the ALJ discounted the opinions of plaintiff's treating and examining physicians, but attributed "significant weight" to the opinions of consulting physician Dr. Vu, who testified at the hearing but did not treat or examine plaintiff, and an Social Security Administration psychological consultant, who also did not treat or examine plaintiff. The ALJ's focus on plaintiff's few encounters with her treating and examining physicians actually undermines the ALJ's reliance on the consulting doctors' opinions.

7

*Third*, contrary to the ALJ's characterization, plaintiff's lab work and tests revealed medical impairments. Two years after her alleged onset date (2010), lab technicians found cladosporium and penicillium in her nasal sample, and stachybotrys and penicillium in her stool sample (AR 331–32). She scored "low average" on the Wechsler Adult Intelligence Scale-IV and "low average" on the Trails-Making Test, indicating depression. Her GAF (presumably, global assessment of functioning) score was sixty, meaning, among other things, a moderate difficulty in social and occupational functioning (AR 17, 343–45). Her MRI results indicated a frozen shoulder, at least according to examining physician Dr. Mow. Also, she tested positive for the Epstein-Barr antibody (AR 424, 484).

*Fourth*, the ALJ gave little weight to Dr. DiGiaro's opinion, because the doctor's objective findings were inconsistent with that opinion. Specifically, the ALJ found that the doctor's observation that plaintiff was polite and cooperative was inconsistent with her opinion that plaintiff was moderately impaired in her ability to interact with others. As a preliminary matter, plaintiff's ability to act politely and cooperatively is not inconsistent with just a moderate impairment in social interaction. Also, the ALJ could have disregarded just that portion of the doctor's opinion, without disregarding the entire opinion over one alleged inconsistency. In any case, our court of appeals has recognized that mental health symptoms "wax and wane," and it is error to pick out isolated instances of improvement as conclusive. *Garrison*, 759 F.3d at 1017.

In sum, the ALJ erred in failing to provide legally sufficient reasons for rejecting the opinions of plaintiff's treating and examining physicians. This order need not address in great detail defendant's specific post-hoc explanations for why various findings by the ALJ could be sustained, in light of the foregoing analysis.

*          *          *

This error infected the ALJ's analysis in at least steps three and five. Again, at step three, the ALJ found that none of plaintiff's impairments (alone or in combination) met the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and at step five, the ALJ determined that plaintiff was able to engage in gainful work existing in substantial numbers in the national economy. The ALJ erred with respect to step three because she failed to account for some of the

symptoms, diagnoses, and opinions of plaintiff's treating and examining physicians. Specifically, she failed to properly consider Drs. Dyne, Kupisk, Hope, and DiGiaro's opinions that plaintiff had posttraumatic stress disorder and depression, baldly concluding that plaintiff's mental impairments were non-severe.

The ALJ erred with respect to her residual functioning capacity assessment and her analysis at step five because she failed to properly account for the limitations discussed by plaintiff's treating and examining physicians, particularly Dr. DiGiaro (plaintiff's problems with dealing with stressors in the workplace, problems with her ability to interact with others, and problems with her ability to perform without additional instructions) and Dr. Hope (if employed, plaintiff would be absent from work five or more times a month, would need unscheduled breaks, and would need reduced hours). Even though the vocational expert testified that these limitations would render such a person "not employable," the ALJ failed to address these factors in her decision.

### 4. PLAINTIFF'S TESTIMONY.

The ALJ also erred in discounting plaintiff's testimony.

To assess a claimant's credibility regarding the intensity of symptoms, the ALJ engages in a two-step analysis. The ALJ first determines whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). If such evidence exists and there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" to reject the claimant's testimony. "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638. On the other hand, there may be "good reasons" for failing to seek medical treatment, including inability to pay, daily activities which minimize symptoms, and medications for relief. Because symptoms of mental-health issues "wax and wane," it is an error to "pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

9

1    Here, the ALJ found that plaintiff had cervical spondylosis, right-shoulder pain, chronic
2 fatigue syndrome, and chronic cough. The ALJ found that "the claimant's medically
3 determinable impairments could reasonably be expected to cause the alleged symptoms."
4 The ALJ then discounted the severity of plaintiff's symptoms, mainly because plaintiff had
5 "sporadic" medical visits, failed to comply with recommended treatments, and engaged in
6 certain daily activities. Plaintiff's statements concerning the intensity, persistence, and limiting
7 effects of her symptoms were "not entirely credible," the ALJ stated (AR 15, 19, 20).

8    The ALJ's concerns about "gaps" in plaintiff's medical visits and her failure to comply
9 with certain treatments were too harsh. From 2011 to 2012, plaintiff visited more than eight
10 medical professionals. She saw physicians, psychiatrists, chiropractors, an environmental-
11 medicine specialist, and an orthopaedic surgeon. Although her fatigue and mobility issues made
12 it difficult for her to drive, on one occasion, in order to see the Social Security's psychiatrist, she
13 hired someone she found online to drive her to the appointment.

14    Contrary to the ALJ's claim that plaintiff failed to seek low-cost alternatives to medical
15 treatment, plaintiff utilized a free clinic for mental-health care on at least two occasions and
16 applied for but was denied indigent adult-health services in 2011 (AR 294, 443–45, 473).
17 She also visited numerous medical professionals despite her "fear of doctors," "general distrust
18 of psychiatrists," and claimed inability to afford medical treatments (AR 67, 68). Although
19 Dr. Hope recommended follow-up with a gastroenterologist, the purpose of that recommendation
20 was to ensure that a previously-tested stool-sample result was accurate given the mold in the
21 house she was residing in at the time. Rather than see the specialist, plaintiff moved out of the
22 mold-infested house (AR 351, 434). The ALJ also erred in finding that "nothing in the record
23 showed she took medication," even though she used nasal itraconazole and psychological
24 medications (AR 434, 337). At the hearing, plaintiff also testified to a preference for holistic
25 treatments based on her religion. The ALJ failed to properly consider these genuine reasons for
26 the so-called "gaps" in her medical visits.

27    The ALJ also took issue with plaintiff's daily activities. Specifically, the ALJ stated that
28 plaintiff "was able to prepare meals, drive long distance[s], manage her finances, shop, read, and

10

1  manage her activities of daily living independently." Plaintiff testified to ongoing efforts in self
2  employment through 2011, and she was "able to travel and still drives in the local area to grocery
3  shop and attend church [sic]" (AR 16, 22).

4  In *Garrison*, our court of appeals found that the ALJ committed two legal errors in
5  discounting the plaintiff's testimony. 759 F.3d at 1016. *First*, the ALJ mischaracterized the
6  plaintiff's testimony regarding her daily activities. *Second*, the ALJ erred in finding that those
7  activities, if performed in the manner described, were inconsistent with the claimed pain-related
8  impairments. It is important not to penalize disability claimants for attempting to lead normal
9  lives in the face of their limitations, our court of appeals stated. *Ibid*.

10  So too here. Contrary to the ALJ's characterization, plaintiff testified that she stays
11  mostly "isolated" at home. Her days are filled with "mandatory naps" due to her exhaustion and
12  difficulty sleeping at night. Dressing without help is hard and she has trouble washing her hair.
13  It is difficult for her to sit in front of a computer for more than twenty minutes at a time.
14  Although she tried to attend church in 2012, it was "only kind of sporadically" (AR 62, 70).
15  At one point in her life, she became "so depressed that [she] was almost at the point of taking
16  [her] life" (AR 68). Sometimes she has "trouble driving" and experiences numbness in her
17  hands due to her frozen shoulder (AR 71). She tends to avoid people because of the three
18  assaults in her past (AR 72). She has "zero social life" and cries sometimes (AR 73). Plaintiff
19  testified: "I have some savings that I saved plus I'm very frugal, I'm extremely frugal. My rent
20  is very minimal because I live in the garage. I don't buy any clothes. I don't go out, I don't
21  travel" (AR 74). The ALJ erred in mischaracterizing plaintiff's testimony.

22  Nor are plaintiff's activities inconsistent with her claimed pain-related impairments.
23  She testified to a frozen shoulder, "overwhelming, debilitating fatigue," lack of energy, limited
24  arm mobility, an inability to sleep on her right side, "sore throats all the time," muscle pain and
25  multi-joint pain, stiffness in her body, numbness in her shoulder and hands, frequent headaches,
26  "constant colds," memory problems, depression, feelings of "something heavy" pressing on her
27  chest, bloody sores in her nose, and redness in her eyes (AR 64–73). These ailments are not
28  inconsistent with how she spends her days, especially since she takes naps, drinks tea, and

11

sometimes asks her landlord to help her dress. Moreover, there is no indication that the limited activities plaintiff engaged in comprised either a "substantial" portion of her day or were "transferrable" to a work environment. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

Accordingly, the ALJ's explanation does not satisfy the requirement of a "clear, convincing, and specific reason" to discredit plaintiff's testimony. *Garrison*, 759 F.3d at 1016.

### 5. OTHER ARGUMENTS.

In light of the foregoing serious errors, this order needs not address plaintiff's other contentions (*i.e.*, that the ALJ erred in rejecting the testimony of her lay witnesses and that the ALJ erred in finding that plaintiff's depression, anxiety, and posttraumatic stress disorder were not severe).

### 6. REMAND.

In light of the ALJ's errors, the question that remains is whether to remand for further proceedings or to remand for an award of benefits. The decision whether to remand for benefits is guided by the three-step "credit-as-true" rule. Each part of the three-part rule must be satisfied in order to remand for benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

In *Garrison*, our court of appeals found that the district court abused its discretion in remanding for further proceedings where the credit-as-true rule was satisfied and the record afforded no reason to believe the plaintiff was not disabled. 759 F.3d at 1020–21. In *Treichler*, however, our court of appeals stated that where there were "significant factual conflicts in the record" between the plaintiff's testimony and objective medical evidence, it was not an abuse of discretion to conclude that not all essential factual issues had been resolved. *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1104 (9th Cir. 2014). Both *Garrison* and *Treichler* were decided in 2014.

Here, it is undisputed that the record is incomplete and further administrative proceedings would be useful. Even plaintiff contends that the ALJ should have re-contacted plaintiff's

12

treating physicians (Br. 13–14, Reply 6–7) and a remand to the ALJ would be appropriate because the Social Security Administration failed to include records her attorney presented to the Appeals Council (Reply 5). Step one of the credit-as-true rule is thus not satisfied and a remand for further proceedings is appropriate. On remand, the ALJ should further develop the record regarding plaintiff's alleged impairments and seek further explanation from plaintiff's treating and examining physicians as appropriate under 20 C.F.R. 404.1520b. The ALJ should also consider the vocational expert's testimony that the person described in counsel for plaintiff's hypotheticals would be "not employable." Accordingly, this order rejects plaintiff's request to remand for benefits.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED IN PART** and defendant's cross-motion for summary judgment is **DENIED**. This action is hereby **REMANDED** to the ALJ for further proceedings consistent with this order. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: April 14, 2015

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE