IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUBA YESIPOVICH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. C 15-00112 WHA

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

## INTRODUCTION

In this social security appeal, plaintiff moves for an order awarding attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. 2412(d). Plaintiff asserts defendant should pay any EAJA fees award directly to her attorney. For the reasons stated below, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

The facts have been set forth in a prior order (Dkt. No. 21). Briefly, in November 2011, plaintiff Luba Yesipovich applied for disability benefits. The Social Security Administration denied her application both initially and on reconsideration, so she requested a hearing. At the administrative hearing in 2013, the administrative law judge heard from plaintiff, her counsel, a vocational expert, and a non-examining medical expert. The administrative record contained voluminous medical records, including records from three treating physicians and two examining physicians. The government submitted records from its consulting physicians and psychologists.

The ALJ found that plaintiff was not disabled. The Social Security Administration Appeals Council denied plaintiff's request for review so the ALJ's decision became final. Plaintiff, via new counsel, sought judicial review of the government's decision pursuant to Section 405(g) of Title 42 of the United States Code. Plaintiff's motion for summary judgment was granted in part and the action was remanded to the ALJ for further proceedings. Plaintiff now moves for attorney's fees and expenses pursuant to the EAJA. Plaintiff seeks $17,048.38 in attorney's fees and $697.78 in costs. Defendant contends that fees and expenses should not be awarded because it was substantially justified in its conduct and that the requested amount is excessive and unreasonable. This order follows full briefing.

**ANALYSIS**

**1.   ENTITLEMENT TO FEES AND EXPENSES.**

The Equal Access to Justice Act provides, in pertinent part, that in order for a fee award to be granted: (1) a party must "prevail" in a civil action, and (2) the government's position in the action, including the underlying administrative proceedings, must not have been "substantially justified." 28 U.S.C. 2412(d)(1)(A).

**A.   Plaintiff Prevailed in a Civil Action.**

A party "prevails" for purposes of the EAJA if the denial of its benefits is reversed and remanded, regardless of whether benefits ultimately are awarded. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1257 (9th Cir. 2001). The government does not dispute that plaintiff was a prevailing party for the purposes of the EAJA. This order finds that plaintiff was the prevailing party.

**B.   The Government's Conduct Was Not Substantially Justified.**

Under the EAJA, the prevailing party is entitled to attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. 2412(d)(1)(A). The government bears the burden of proving that its position, both in the underlying administrative proceedings and in the subsequent litigation, was substantially justified. *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013). Our court of appeals has held that this standard is one of reasonableness, and the government

2

1   must establish that it "had a reasonable basis both in law and fact" for its conduct. *Sampson v.*
2   *Chater*, 103 F.3d 918, 921 (9th Cir. 1996).

3   An April 2015 order granted in part plaintiff's motion for summary judgment and
4   remanded the case back to the ALJ. That order found that the ALJ failed to provide specific
5   and legitimate reasons supported by substantial evidence for rejecting the opinions of plaintiff's
6   treating and examining physicians. The order also found that the ALJ erred in discounting
7   certain aspects of plaintiff's testimony. Although the order reversed several of the ALJ's
8   findings that were favorable to the government, the government nevertheless argues that its
9   litigation position was substantially justified.

10  The April 2015 order found the ALJ offered insufficient justification for discounting the
11  conclusions of five physicians who had had direct contact with plaintiff, all of whom found that
12  she was "disabled." The government cites *McLoed v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011),
13  for the contention that an ALJ has the authority to disregard the opinions of treating physicians
14  who conclude a plaintiff is "disabled," as that determination is one reserved for the
15  Commissioner. The ALJ, however, must still have "specific and legitimate reasons that are
16  supported by substantial evidence in the record" for rejecting the opinions of treating and
17  examining physicians. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

18  This order now turns to the government's proffered justifications for its specific positions
19  in the administrative proceedings and in litigation. Although the government offers several
20  justifications, each of those justifications are based on either a mischaracterization of plaintiff's
21  testimony or a mischaracterization of the medical evidence.

22  *(1)    Mischaracterization of Plaintiff's Testimony.*

23  The April 2015 order found that the ALJ erroneously discounted medical opinions that
24  appeared to rely on plaintiff's subjective statements pertaining to her claims of chronic fatigue
25  syndrome.

26  In *Reddick v. Chater*, 157 F.3d 715, 725–26 (9th Cir. 1998), our court of appeals
27  concluded that an ALJ's rejection of two physician opinions (one treating, one consulting) on the
28  "premise that they were based on the subjective complaints of the claimant" was "ill-suited" for

3

the case because the symptom of persistent fatigue is necessarily self-reported in a diagnosis of chronic fatigue syndrome. The conclusion was supported by SSR 99-2p, which is a Social Security Ruling that outlines the importance of self-reported symptoms for a chronic fatigue syndrome diagnosis.

The government argues that neither *Reddick* nor SSR 99-2p "require[s] an ALJ to automatically credit a claimant's testimony just because there was also a finding of chronic fatigue syndrome" (Def.'s Opp. At 3). Rather, both the government and the ALJ remained entitled to make specific credibility findings related to chronic fatigue syndrome, and indeed they did make those findings based on testimony that plaintiff cared for herself, prepared meals, did chores, and read. The government argues it was substantially justified in advancing its position on the basis of those findings. Not so.

The government lacked substantial justification to press the ALJ's findings on chronic fatigue syndrome because the ALJ had mischaracterized plaintiff's testimony regarding her daily activities. The April 2015 order found, contrary to the ALJ's characterization, plaintiff's testimony remained consistent with claimed chronic fatigue syndrome. Although she testified that she cared for herself, prepared meals, did chores, and read, she also testified that she stayed mostly "isolated" at home. Furthermore, her days were filled with "naps" due to her exhaustion and difficultly sleeping at night. She averred it was difficult for her to sit in front of a computer for more than twenty minutes at a time. Although she tried to attend church in 2012, it was "only kind of sporadically." Plaintiff also testified that she doesn't go out or travel. Thus, the government was not substantially justified in discounting medical opinions that appeared to rely on plaintiff's subjective statements pertaining to her claims of chronic fatigue syndrome because plaintiff's testimony about activities she undertook remained consistent with her further testimony in support of her claimed chronic fatigue syndrome. The ALJ's conclusion was based on a mischaracterization of plaintiff's testimony.

The government also argues that in considering plaintiff's testimony the ALJ looked at "a sufficient number of factors that her evaluation was — even if not sufficient to meet the Court's view of the standard — reasonably based in law and fact such that it was substantially justified"

4

(Def.'s Opp. at 5). The government cites *Carmickle v. Commissioner, Social Security Administration*, 533 F.3d 1155, 1162 (9th Cir. 2008), to support the assertion that even if one of an ALJ's reasons for discrediting plaintiff's testimony was invalid the government may be substantially justified as long as the ultimate decision remains legally valid. Here, the ALJ's decision was not legally valid, so *Carmickle* does not apply.

This order finds the government had no substantial justification for pressing forward with litigation based on the ALJ's mischaracterization of plaintiff's testimony.

### *(2)   Mischaracterization of the Medical Evidence.*

The government was not substantially justified in several of its proffered justifications because the ALJ's mischaracterization of medical evidence infected its analysis.

The April 2015 order found that plaintiff's lab work and tests revealed that she suffered from medical impairments. The government, however, states that it was substantially justified in arguing in favor of the ALJ's findings because the diagnosis of a medical impairment does not necessarily establish the severity and limitations that would yield a determination of "disability." In *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993), our court of appeals stated that "[t]he mere existence of an impairment [was] insufficient proof of a disability." The government, therefore, argues that although there existed lab testing that revealed various conditions, "this evidence did not resolve the issue of what impact, if any, those conditions had on [p]laintiff's residual functional capacity" (Def.'s Opp. at 4).

The government had no substantial justification for rejecting plaintiff's doctors' opinions. Contrary to the ALJ's characterization, plaintiff's lab work and tests revealed medical impairments. Two years after plaintiff's alleged onset date, lab technicians found cladosporium and penicillium in her nasal sample, and stachybotrys and penicillium in her stool sample, indicating mold exposure. She scored "low average" on the Wechsler Adult Intelligence Scale-IV and "low average" on the Trails-Making Test, indicating depression. One of plaintiff's examining physicians reviewed an MRI and made a diagnosis of frozen shoulder. Also, plaintiff tested positive for the Epstein-Barr antibody.

5

The ALJ further erred with respect to plaintiff's residual functioning capacity assessment because of failure to properly account for the limitations discussed by plaintiff's treating and examining physicians. Particularly, one of plaintiff's examining physicians described plaintiff's problems dealing with stressors in the workplace, her ability to interact with others, and her ability to perform without additional instructions. One of plaintiff's treating physicians noted that if plaintiff were employed, she would be absent from work five or more times a month, would need unscheduled breaks, and would need reduced hours. Even though the government's vocational expert testified that these limitations would render such a person "not employable," the ALJ failed to address these factors.

This order finds the government had no substantial justification for pressing forward with litigation in light of the ALJ's rejection of plaintiff's lab work and tests without clear and convincing reasons for doing so.

The government also mischaracterized the record in terms of the mental health treatment that plaintiff sought. The April 2015 order found the ALJ erred in disregarding one of plaintiff's examining physician's opinion on the basis that plaintiff's ability to act politely and cooperatively was inconsistent with a moderate impairment of interacting with others. The government, however, disputes that the ALJ rejected the opinion of the examining physician based on only that one factor (Def.'s Opp. at 5). The government states that the ALJ also rejected the examining physician's opinion as "inconsistent with the fact that [p]laintiff sought mental health treatment on only two other occasions" (*ibid.*).

The government provides no legitimate reason for the ALJ's rejection of the examining physician's opinion on the basis that plaintiff sought mental health treatment on only two other occasions. Our court of appeals has held that "it is a questionable practice to chastise one with mental impairments for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9h Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Here, plaintiff utilized a free clinic for mental-health care at least twice. She also visited numerous medical professionals despite her "fear of doctors" and "general distrust of psychiatrists." The government had no substantial justification for pressing forward

6

with litigation because the ALJ's conclusion relied on its erroneous rejection of one of the examining physician's opinion.

The ALJ had no reasonable basis in fact for deciding that "gaps" existed in plaintiff's medical treatment and the government was not substantially justified in defending that position. The April 2015 order found that the ALJ's concerns about "gaps" in plaintiff's medical visits were "too harsh." The government argues that this was a subjective determination and although the Court has the power to make such a determination, it "does not mean that the ALJ was unreasonable to a degree that the decision was not substantially justified" (Def.'s Opp. at 5).

The government was not substantially justified in pressing forward with litigation on this basis because the argument that there were "gaps" in plaintiff's medical treatment was not reasonably supported by the facts. From 2011 to 2012, plaintiff visited more than eight medical professionals. She saw physicians, psychiatrists, chiropractors, and an environmental-medicine specialist, as well as an orthopaedic surgeon. Thus, the government's position is unavailing.

Lastly, although the April 2015 order determined that the ALJ erred in giving more weight to the testimony of a medical expert than to plaintiff's examining physicians, the government argues it had a reasonable basis in law for advancing the ALJ's reliance on a non-examining expert who testified that there existed inconsistent evidence regarding plaintiff's right shoulder, and that a negative MRI was inconsistent with allegations of frozen shoulder. Our court of appeals has previously approved of reliance on a non-examining expert's opinion where that opinion remained consistent with other evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ, however, must provide "specific, legitimate reasons" for rejecting "the testimony of an examining, but non-treating physician in favor of a nonexamining, non-treating physician," and those reasons must be supported by substantial evidence in the record. *Lester*, 81 F.3d at 831 (quoting *Roberts v. Shalala*, 66 F.3d 179, 183–84 (9th Cir. 1995)). Here, the non-examining physician's testimony did not provide clear and convincing reasons for rejecting the other physicians' opinions and was not supported by substantial evidence. Plaintiff's examining orthopaedic surgeon, after also having reviewed an MRI, diagnosed plaintiff with frozen shoulder and stated that she was disabled. This opinion

1  was supported by plaintiff's chiropractor who agreed that plaintiff was disabled by her frozen
2  shoulder.  This order finds the government had no substantial justification for pressing forward
3  with litigation based on the ALJ's decision to attribute greater weight to the opinion of a
4  testifying physician over that of multiple examining physicians without specific and legitimate
5  reasons supported by substantial evidence.

As the government had no substantial justification for pressing forward with litigation, this order finds plaintiff is entitled to fees and expenses under the EAJA.  The only issue that remains is the reasonableness of the sum plaintiff seeks.

### 2. REASONABLENESS OF FEES AND EXPENSES.

In establishing the reasonableness of fees and expenses under the EAJA, it is plaintiff's burden to document "the appropriate hours expended in the litigation by submitting evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved, in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983).

### A.  Disputed Fees and Expenses.

Plaintiff claims her counsel appropriately billed 89.7 hours in fees and $697.78 in expenses in this action (Rizzo Decl., Exhs. A–C and Pl.'s Reply at 14–15).  The government responds that plaintiff's counsel over-billed and objects to several line items claiming plaintiff failed to demonstrate that those items are sufficiently related and reasonable.  Each of these objections are addressed in turn.

#### *(1)   2.6 Hours of Allegedly Pre-Complaint Work*.

The government objects to 2.6 hours of pre-complaint work on the basis that because counsel also billed for drafting and preparing the complaint, it is unclear how these hours relate to preparation of the complaint.  The objectionable line items are as follows:

| DATE: | DESCRIPTION OF WORK: | HOURS: | GOVERNMENT'S OBJECTIONS: |
|---|---|---|---|
| 7/26/2014; 8/2/2014 | Teleconference w/ client re representation. | 0.4 hours | Since counsel also billed for drafting and preparing the complaint, it is unclear how these hours relate to preparation of the complaint. |
| 7/26/2014; 7/27/2014; 7/28/2014; 8/1/2014; 8/2/2014; 8/4/2014 | Sent e-mails to client. | 0.8 hours | Since counsel also billed for drafting and preparing the complaint, it is unclear how these hours relate to preparation of the complaint. |
| 7/30/2014; 7/31/2014 | Emails with administrative counsel. | 0.4 hours | Since counsel also billed for drafting and preparing the complaint, it is unclear how these hours relate to preparation of the complaint. |
| 8/8/2014 | Prepared docs for representation. | 1.0 hours | Since counsel also billed for drafting and preparing the complaint, it is unclear how these hours relate to preparation of the complaint. |

The government argues that a plaintiff may only recover pre-complaint fees under the EAJA to the extent they are related to the preparation of the complaint. The government argues that since plaintiff's counsel also billed for preparing the complaint, it is unclear how any of the pre-complaint line items above were properly billed under the EAJA as opposed to routine representational work.

Our court of appeals has held that Social Security disability cases often involve "highly fact-intensive" cases and the reviewing of extensive administrative records. *Costa v. Commissioner of SSA*, 690 F.3d 1132, 1134 n. 1 (9th Cir. 2012). So too here. This case was highly fact intensive and involved many administrative proceedings. Plaintiff's counsel had to review all previous administrative proceedings and familiarize themselves with the record. As part of this preparation, plaintiff's counsel state the above time was spent determining the merits of the case prior to filing.

9

1   This order finds that these 2.6 hours were reasonably billed.

### (2)   *5.6 Hours of Allegedly Unrelated Work.*

The government objects to 5.6 hours of work as unrelated to the prosecution of this case. The objectionable line items are as follows:

| DATE: | DESCRIPTION OF WORK: | HOURS: | GOVERNMENT'S OBJECTIONS: |
|---|---|---|---|
| 11/4/2014 | Teleconference w/ client re new evidence. | 0.2 hours | Unclear what the purported new evidence is. |
| 1/28/2015 | Teleconference w/ client re motion for summary judgment. | 0.5 hours | Unclear how teleconferences with the client are reasonably billable. |
| 8/8/2014 | Drafted letter to DOT re federal debts. | 0.1 hours | Does not appear related to the prosecution of the civil action. |
| 8/8/2014; 8/28/2014; 1/6/2015 | Drafted letter to client. | 0.3 hours | No indication what these material relate to. |
| 8/12/2014; 8/22/2014; 10/25/2014; 12/22/2014; 12/27/2014; 1/22/2015; 1/23/2015; 1/26/2015; 1/30/2015; 4/17/2015 | Emails between counsel and plaintiff. | 1.5 hours | No indication what these material relate to. |
| 1/8/2015; 1/9/2015 | Reviewed administrative record. | 3.0 hours | Because these entries postdate the complaint and predate briefing, it is entirely unclear how these hours relate to the prosecution of this case. |

The government argues that it is unclear what the purported new evidence discussed on November 4th, 2014 was, so it is not reasonably billable. Plaintiff's counsel aver they used this time to discuss the "contents of the new evidence that prior counsel had submitted to the Appeals Council, but which was missing from the administrative record" (Pl.'s Reply at 13). This order finds that this 0.2 hours entry for a teleconference to review that evidence was reasonable.

10

The government objects to the 0.5 hours spent for a teleconference with client regarding the court's summary judgment decision as unclear how teleconferences with the client are reasonably billable. The government objects to 0.3 hours spent drafting letters to the client on August 8, 28, and January 6, 2014 because there is no indication what these materials relate to. The government objects to 1.5 hours spent on emails between counsel and plaintiff on August 12, 22, October 25, December 22, 27, 2014, January 22, 23, 26, 30, and April 17, 2015.[1] Plaintiff states that counsel used the above 2.3 hours to answer the client's questions regarding the Court's decision and addressing the client's general concerns. This order holds that these 2.3 hours constituted time reasonably spent communicating with the client.

The government objects to 3.0 hours spent on January 8 and 9, 2015 reviewing the administrative record because it is unclear how these hours related to the prosecution of this case since these hours postdated the complaint but predated the briefing of plaintiff's motion. Plaintiff's counsel respond that they "did not receive the entire administrative record until the [government] filed it in District Court in December 2014," and it was necessary to review the administrative record prior to briefing the motion for summary judgment (Pl.'s Reply at 13). This order finds that these 3.0 hours constituted reasonably billable hours for the purposes of reviewing the record after the complaint was filed.

This order finds that the 0.1 hours for drafting a "letter to DOT re federal debts" does not appear related to this action and, as such, is not reasonably chargeable to the government. Plaintiff did not address this issue in her briefs. 0.1 hours should accordingly be reduced.

Thus, of the 5.6 hours the government challenges as unrelated to the prosecution of this action, this order finds 5.5 hours were properly billed under the EAJA.

---

[1] The Court adjusts this to 1.5 hours spent on emails between counsel and plaintiff due to the government's calculation error.

11

### *(3)     17.5 Hours of Allegedly Excessive Billing.*

The government objects to 17.5 hours of billing on the basis that it is unclear whether any of this time was part of the unavoidable process of getting back up to speed on where counsel were in drafting the motions. The objectionable line items are as follows:

| DATE: | DESCRIPTION OF WORK: | HOURS: | GOVERNMENT'S OBJECTIONS: |
|---|---|---|---|
| 1/12/2015-1/26/2015 | Drafted Motion for Summary Judgment. | 28.3 hours | Unclear whether any of this time was part of the unavoidable process of getting back up to speed on where counsel were in drafting. |
| 2/11/2015-2/16/2015 | Drafted Reply. | 24.2 hours | Unclear whether any of this time was part of the unavoidable process of getting back up to speed on where counsel were in drafting. |

The government argues that the 28.3 hours spent drafting the motion for summary judgment and the 24.3 hours spent drafting the reply was excessive. The government states that all of the above work should be reduced by 17.5 hours.

The fees for drafting the motion for summary judgment are billed incrementally over fifteen days. Plaintiff's counsel billed nine different days from January 12 to January 26, 2015, sometimes only spending an hour and a half or less drafting the motion for summary judgment. It is unclear whether counsel had to re-familiarize themselves with the issues and facts of the case due to the incremental time spent drafting the motion.

Although some reduction is appropriate based on the government's objections this order finds the government's proposed reduction of 17.5 hours is too harsh. In *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), our court of appeals decided "the district court can impose a small reduction, no greater than 10 percent — a 'haircut' — based on its exercise of discretion and without a more specific explanation." In light of the above, this order finds that

counsel spent an excessive time drafting the motion for summary judgment and orders a ten percent reduction on fees charged for drafting the motion for summary judgment, but no reduction is made for the reply.

Thus, of the 52.5 hours the government billed for drafting the above motions, this order finds that 49.67 hours were properly billed under the EAJA.

### *(4)   2.1 Hours of Allegedly Duplicative Work.*

The government objects to 2.1 hours of legal research on the basis that it is duplicative work. The objectionable line items are as follows:

| DATE: | DESCRIPTION OF WORK: | HOURS: | GOVERNMENT'S OBJECTIONS: |
|---|---|---|---|
| 12/28/2014 | Legal research re change of venue. | 0.6 hours | Unclear how this entry is separate from briefing. |
| 1/10/2015 | Legal research for Reply | 1.5 hours | Unclear how this entry is separate from briefing. |

The government argues that it is unclear how entries for legal research are separate from the entries for time spent briefing (Def.'s Opp. at 9).

This order finds that these 2.1 hours of legal research constitute a reasonable amount of time to bill in light of the total time spent on the final work product.

### *(5)   $175.08 of Allegedly Unreasonably Costs.*

Plaintiff submitted a log of costs and expenses totaling $611.01. The government objects to $1.70 in copying costs and $8.38 in postage fees because they relate to the objections raised above. Specifically, regarding the government's objections to pre-complaint fees and pre-complaint letters to plaintiff, the Commissioner, and the Treasury. The government objects to $165.00 in LEXIS fees because it is unclear whether this entry is separate from briefing, and counsel's billing sheets do not give sufficient grounds to determine whether these research fees

are reasonable. This order finds that $175.08 was properly billed under the EAJA as it relates to the work performed by plaintiff's counsel as described above.

### B.     Plaintiff's Fees and Costs Incurred in Filing Reply.

In drafting a reply to government's opposition to motion for attorney fees pursuant to the EAJA plaintiff incurred the following additional expenses:

| DESCRIPTION OF WORK: | HOURS/COSTS: |
|---|---|
| Reviewing the SSA's opposition to the EAJA motion and researching, preparing, and filing a reply. | 18.9 hours |
| Legal research expenses. | $82.50 |
| Postage and copying expenses. | $4.27 |

This order finds it reasonable to bill for 18.9 hours spent drafting the reply and for $86.77 in expenses.

### C.     Calculation.

Based on the foregoing discussion, this order finds that plaintiff is entitled to reimbursement for **86.77 hours in fees** and **$697.78 in expenses**.

A prevailing party may recover his or her reasonable fees and expenses, but cannot claim attorney's fees "in excess of $125 per hour unless the court determines an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. 2412(d)(2)(A). Here, plaintiff seeks an award of attorney's fees calculated at a rate adjusted to account for an increase in the cost-of-living. The 2014 EAJA adjusted rate is $190.06 per hour. The government does not dispute this adjustment. Multiplying the hourly rate ($190.06) by the total number of hours reasonably billed (86.77), plaintiff is entitled to $16,491.51 in attorney's fees, plus the $697.78 in costs addressed above.

### D. Direct Payment of Attorney's Fees.

Plaintiff's counsel request direct payment of attorney's fees, costs, and expenses. The government argues that assignment of attorney's fees are subject to any offset for plaintiff's outstanding federal debt.

In *Astrue v. Ratliff*, 560 U.S. 586, 591–97 (2010), the Court ruled that EAJA fees are subject to offset if the prevailing party owes a government debt. When a pre-existing government debt exists, EAJA fees are payable to plaintiff rather than plaintiff's attorney in order to satisfy the debt. Here, the prevailing party has assigned her EAJA fees to plaintiff's counsel (Rizzo Decl., Exh. A). There is no information on whether plaintiff owes a pre-existing debt to the government.

Additionally, the Anti-Assignment Act, 31 U.S.C. 3727 applies to an assignment of EAJA fees in a Social Security Appeal for disability benefits. The Act covers "any part of a claim against the United States Government" and provides that "[a]n assignment may be made only after" certain requirements are met. Accordingly, this order holds EAJA fees may be paid directly to plaintiff's counsel, subject to any government debt offset and subject to the government's waiver of the requirements under the Anti-Assignment Act.

## CONCLUSION

For the foregoing reasons, plaintiff's request for attorney's fees and costs under the EAJA is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is entitled to recover reasonable attorney's fees in the amount of $16,491.51 and costs in the amount of $697.78.

**IT IS SO ORDERED.**

Dated: September 28, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE